**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| GEORGE IROGBELE, | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | **PE:25-CV-00009-DC-DF** |
| | § | |
| COIL TUBING PARTNERS, LLC, | § | |
| *Defendant.* | § | |

## U.S MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BEFORE THE COURT is Defendant Coil Tubing Partners, LLC's ("CTP") Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue. (Doc. 8). CTP moves the Court to dismiss this case for improper venue pursuant FED. R. CIV. P. 12(b)(3), or, alternatively, to transfer venue from the Pecos Division of the United States District Court for the Western District of Texas ("WDTX-Pecos") to the Lafayette Division of the United States District Court for the Western District of Louisiana ("WDLA-Lafayette") pursuant to 28 U.S.C. § 1404(a). Plaintiff George Irogbele ("Plaintiff") opposes the motion to dismiss or transfer venue. (Docs. 11, 13). The District Court has referred this matter to the undersigned Magistrate Judge pursuant to its Standing Order on Case Management dated July 27, 2022. After considering all related pleadings and relevant law, this Court **RECOMMENDS** the motion to transfer be **GRANTED**. (Doc. 8).

## NATURE OF CASE AND FACTUAL BACKGROUND

### I.    NATURE OF CASE

On October 17, 2022, CTP terminated Plaintiff's employment, citing misconduct which was alleged to have occurred two days earlier. Plaintiff disputes that account. He contends that his discharge was not discipline for conduct, but discrimination in disguise—an adverse action driven by prejudice tied to his race and ethnicity. (Doc. 1 at 13). On that premise, he brings this action for wrongful termination and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.* of the Civil Rights Act of 1964. (Doc. 1 at 1).[1]

### II.    FACTUAL BACKGROUND

Plaintiff worked as an equipment operator for CTP from August 8, 2022, until October 17, 2024. (Doc. 1 at 2). CTP is an oil and gas service company headquartered in Lafayette, Louisiana, where it manages its workforce, maintains personnel records, and makes employment decisions. (Doc. 14 at 2). CTP supplies coil tubing crews to energy clients across the Permian Basin, including Occidental Petroleum. (Doc. 8-5 at 2).

---

1. Plaintiff also alleges a violation under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601—2654, based on the passing comment of a coworker, who allegedly told Plaintiff in the early morning of October 15, 2024, that "these excuses have been going on for too long, and you will have to talk to Emile after the 8 am safety meeting . . . ." (Doc. 1 at 15-16). Plaintiff infers this comment could be interpreted as discriminatory. *Id.* Plaintiff further alleges "[b]arring any adverse employment effects, [Plaintiff] acknowledges that the comment made by [the coworker] while insensitive, does not provide a solid basis for a federal court claim under FMLA violations." *Id.* at 16. This Court is mindful that it must construe *pro se* pleadings liberally, but even under a liberal construction, this claim is conclusory and does not merit relief. *See Guidry v. Bank of LaPlace*, 470 F.3d 273, 281 (5th Cir. 2006) (holding conclusory allegations, speculation, and legal conclusions dressed as facts do not merit relief and need not be credited by the court); *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (same). Pleadings must rest on facts rather than guesswork. And because this Court decides cases on facts, not conjecture, Plaintiff's admittedly speculative claim does not merit relief.

Plaintiff's work routinely requires access to client properties, and by his own account, a substantial portion of his assignments were performed at Occidental sites. (Doc. 1 at 2).

This dispute traces to an incident on October 15, 2024, at an Occidental site in Loving County, Texas, just outside the town of Mentone. *Id.* at 10. As Plaintiff rode as a passenger in a company truck departing the site, a gate guard stopped the vehicle and accused the driver of rolling through a stop sign. *Id.* at 7. Plaintiff intervened, advising the driver not to produce his license and challenging the guard's authority to enforce traffic rules on private property. (Docs. 1 at 7; 11-2 at 3). The exchange escalated, and Plaintiff told the guard to call her supervisor, call CTP, or "better still, call the police." (Docs. 1 at 8; 8-2 at 2). The guard called her supervisor and, after the call, informed Plaintiff that he was barred from all Occidental properties. (Docs. 1 at 8; 8-2 at 2). The ban had immediate effect. (Doc. 1 at 1-2). The following day, Plaintiff reported to CTP's Midland field office and submitted a written account of the incident. (Doc. 8-2 at 2). That account, along with other witness statements, was forwarded through CTP's supervisory and human resources channels to company leadership in Lafayette. (Doc. 8-2 at 3). After review, CTP terminated Plaintiff's employment on October 17, 2024, citing his conduct at the gate. (Docs. 1 at 11-12; 8-2 at 3).

## LEGAL STANDARD

Congress has adopted special venue provisions for Title VII cases. *In re Horseshoe Ent.*, 337 F.3d 429, 432 (5th Cir. 2003) (per curiam). Specifically, 42 U.S.C. § 2000e-5(f)(3) provides:

> [A Title VII action] may be brought in any judicial district, in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to the practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). Additionally, the general venue provisions under 28 U.S.C. §§ 1404(a) and 1406 are applicable and must also be considered. *Horseshoe Ent.*, 337 F.3d at 433.

28 U.S.C. § 1404(a) authorizes a district court to transfer a civil action, for the convenience of parties and witnesses and in the interest of justice, to any other district or division where the action might have been brought, or to any district or division to which all parties have consented. The statute entrusts the decision to the district court's sound discretion, calling for an individualized, case-by-case appraisal of convenience and fairness, not a mechanical or categorical rule. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The threshold inquiry under § 1404(a) is whether the action could have been brought in the proposed transferee forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir 2008) (en banc) (hereinafter *Volkswagen II*). If so, the court then evaluates a series of private and public interest factors, none of which is dispositive on its own. *Action Indus., Inc. v. U.S. Fed. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). Private interest factors include: (1) the relative ease of access to sources of proof; (2) the

4

availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) other practical concerns that might affect the ease, speed, or expense of trial. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter *Volkswagen I*) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). Public interest factors include: (1) administrative difficulties stemming from court congestion; (2) the local interest in having localized controversies decided at home; (3) the forums familiarity with the governing law; and (4) the avoidance of unnecessary conflicts of law or problems involving foreign law. *Id*.

The burden of demonstrating entitlement to transfer rests squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). It's not enough to show that the proposed venue would be convenient; the movant must establish that it is clearly more convenient. *Volkswagen II*, 545 F. 3d at 314 n.10; *see In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) (finding that movant must "clearly establish good cause for transfer based on convenience and justice"); *see also Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967) ("Section 1404 operates where there are two (or more) forums where a suit could be brought and where it could proceed. . . . Its purpose is to determine the most convenient forum among two or more possibly correct ones."). And while the plaintiff's choice of forum is not accorded dispositive weight, it is a meaningful consideration, reflected in the heightened burden the movant must carry. *See Volkswagen II*, 545 F.3d at 315 ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be

respected."). In weighing a transfer motion, courts may look beyond the pleadings to undisputed facts and must draw all reasonable inferences and resolve all factual disputes in favor of the non-moving party. *Weatherford Tech. Holdings, LLC. v. Tesco Corp.*, No. 2:17-CV-000456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 12, 2018).

## DISCUSSION

The threshold consideration under § 1404(a) is whether this action could have been properly brought in the proposed transferee forum. *Volkswagen II*, 545 F.3d at 312. It could. CTP is headquartered in Lafayette, Louisiana. (Doc. 8 at 2). Its senior management and human resources personnel work there, and its employment and personnel records are maintained there. (Docs. 8 at 2; 8-2 at 1; 8-3 at 1). Fifth Circuit precedent recognizes that that a transferee forum is proper where an employer's headquarters, records, and decisionmakers are located. *See Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003).

Under Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3), venue is therefore proper in the WDLA-Lafayette. With that threshold satisfied, the Court turns to whether transfer would serve the convenience of the parties and witnesses and the interest of justice.

### I.   PRIVATE INTEREST FACTORS

#### A. Access to Sources of Proof

The first private interest factor is access to sources of proof. The Fifth Circuit explains:

> The first factor focuses on the location of documents and physical evidence relating to the case. The question is *relative* ease of access, not *absolute* ease of access. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case. But when the vast majority of the evidence is electronic, and therefore easily accessible in either forum, this factor bears less strongly on the transfer analysis.

*In re TikTok*, 85 F.4th 352, 358 (5th Cir. 2023) (emphasis in original; internal quotations, citations, and alterations omitted).

In his sworn declaration, Plaintiff asserts that he was fired by his immediate supervisor, James Osborne, a field manager assigned to CTP's Midland office. (Docs. 1 at 11; 11-2 at 4). From that premise, Plaintiff contends the paper trail runs through Midland: the emails, the timesheets, and witness statements were generated there, and the laptop used to draft the statements sat on a Midland desk. (Doc. 11-5 at 5-6). In Plaintiff's telling, both the facts and the firing occurred in the WDTX, making that forum the proper venue.

CTP's account is different—and more on point. Plaintiff was not discharged on the spot. After the October 15 altercation and Occidental's decision to bar Plaintiff from its properties, Plaintiff reported the next day to CTP's Midland field office, where he provided a written statement describing the incident. (Doc. 8-3 at 2). A statement from the vehicles driver was also collected. *Id.* Those materials were then forwarded to CTP's headquarters in Lafayette, where the matter was reviewed by the appropriate decisionmakers, including the company's resources director and chief executive officer.

7

(Doc. 8-3 at 2–3). It was there—and only there—that the decision to terminate Plaintiff's employment was made.

To be sure, modern litigation often proceeds on electronic records, and advances in technology have reduced the burden of transporting documents. *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). But electronic availability is not a solvent that dissolves geography altogether. The Fifth Circuit instructs courts to look not to the abstract availability of electronic discovery, but to the practical reality of where evidence is maintained, controlled, and produced, including the location of the custodians responsible for managing and authenticating it. *Id.*

Here, CTP's principal office is in Lafayette. Its personnel files, disciplinary records, internal communications, and termination documents are maintained there, and the custodians of those records work there. (Docs. 8 at 2; 8-2 at 1; 8-3 at 1). And neither party has identified any category of documentary evidence maintained exclusively in the Pecos Division.

Nor is Plaintiff inconvenienced by that reality. Plaintiff now resides in Maurice, Louisiana—approximately 15 miles from Lafayette, and well within the Lafayette Division. (Doc. 1 at 5). In practical terms, access to records, whether electronic or physical, is easier there than in West Texas. Accordingly, the access to proof factor favors transfer to WDLA-Lafayette. *See id.*; *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

8

### B.  Availability of Compulsory Process (Unwilling Witnesses)

The second private interest factor concerns the availability of compulsory process to secure the attendance of unwilling witnesses. *TikTok*, 85 F.4th at 360. This factor, however, "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id*. (quoting *Planned Parenthood*, 52 F.4th at 630–31) (internal quotations omitted).

Here, neither party has identified any witness who would be unwilling to appear voluntarily in either forum. CTP has not offered evidence—by affidavit or otherwise—that compulsory process would be necessary to secure the attendance of any prospective witness. Nor has Plaintiff suggested that any witness would resist voluntary testimony. Where the record is silent as to unwillingness, courts are instructed not to attach substantial weight to this factor. *In re Radmax, Ltd.*, 720 F.3d at 288-89; *see also Planned Parenthood*, 54 F.4th at 630-31 (observing this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify"); *Turner v. Cincinnati Ins. Co.*, No. 6:19-cv-642, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020) ("When no party has alleged or shown any witness's unwillingness [to testify], a court should not attach much weight to the compulsory process factor.").

Accordingly, because no witness has been shown to be unwilling, the availability of compulsory process does not materially favor either forum and is properly treated as neutral. *See EEOC v. Faurecia Auto. Seating, LLC*, No. 4:16-cv-199-DMB, 2012 WL 4158624, at *4 n.4 (N.D. Miss. Sept. 19, 2017) (collecting cases finding the compulsory

process factor neutral when the movant "failed to show that any of the prospective witnesses would be unwilling to testify absent a subpoena"). To the extent the factor has any bearing at all, it weighs only slightly against transfer, as CTP bears the burden to demonstrate that compulsory process would be meaningfully more available in the transferee forum and has not done so here. *See Volkswagen I*, 371 F.3d at 205.

### C. Cost of Attendance for Willing Witnesses

The third private interest factor concerns the cost of attendance for willing witnesses. This factor has been described as particularly important. *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). The Fifth Circuit applies a flexible "100-mile rule," under which inconvenience increases with distance, though the rule is not ridged and must be applied considering modern travel realities. *Volkswagen II*, 545 F.3d at 317; *Volkswagen I*, 371 F.3d at 204-05. Although the convenience of the employee witnesses is given less weight than that of non-party witnesses, it is not ignored. *Volkswagen II*, 545 F.3d at 317. Employee witnesses still must travel, still incur costs, and will still face disruption when trial is held far from their place of work. *Id.*

Here, many of the identified key willing witnesses—including Plaintiff, CTP's chairman, its human resources director, the relevant supervisory personnel—reside in the WDLA-Lafayette. (Docs. 8-2 at 2–3; 8-3 at 2). Proceeding to trial in Pecos would therefore require practically every willing witness to travel a substantial distance, while trial in Lafayette would impose little or no travel burden at all. Where, as here, the willing witnesses are concentrated in the transferee forum the Fifth Circuit has

consistently held that this factor weighs in favor of transfer. *In re Radmax*, 720 F.3d at 289; *Bruck*, 30 F.4th at 434–35.

### D.  Other Practical Problems

The fourth private interest factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen I*, 371 F.3d at 203. Courts frequently find this factor neutral where the parties do not identify specific logistical concerns. *See, e.g., Swissdigital USA Co., Ltd. v. Wenger S.A.*, No. 2:21-cv-453-ADA-G, 2022 WL 1491348, at *4 (W.D. Tex. May 11, 2022) (holding factor is neutral where neither party identifies any other practical problem).

This case, however, presents identifiable practical considerations. Many of CTP's witnesses, including senior decisionmakers and supervisory personnel, reside in WDLA—Lafayette. (Docs. 8-2 at 2; 8-2 at 2–3). Relevant records are kept there. *Id.* And Plaintiff likewise resides there. (Doc. 1 at 18). Trying the case in Lafayette would eliminate the majority of witness travel costs, reduce scheduling constraints, and permit greater flexibility in presenting testimony. By contrast, trial in the Pecos Division would require Plaintiff and most of CTP's witnesses to travel, increasing expenses and introducing avoidable logistical complications.

Transfer would simplify trial logistics, reduce avoidable costs, and clear away practical problems that would otherwise burden the case. A trial in the transferee forum would be easier, faster, and cheaper. Courts within the Fifth Circuit have found these considerations weigh decidedly in favor of transfer. *See Volkswagen II,* 545 F.3d at 318;

*see also Affinity Labs of Tex. v. Samsung Electronics Co., Ltd.*, 968 F. Supp. 2d 852, 858 (E.D. Tex. 2013) (citing *In re Vistaprint*, 628 F.3d 1342, 1347 Fed. Cir. 2010) (finding judicial economy is a paramount consideration)). Accordingly, this factor favors transfer.

## II.     PUBLIC INTEREST FACTORS

### A. Court Congestion

The public interest factor concerning court congestion is, by its nature, the most speculative of the transfer considerations. *In re Clarke*, 94 F.4th 505, 515-16 (5th Cir. 2024). While parties sometimes cite statistics suggesting that a case may reach trial marginally faster in one district than another, the Fifth Circuit has cautioned that such figures are not dispositive and should be treated with care. *Id*. at 510. Estimates of docket speed are, at bottom, predictions—useful in the abstract, but uncertain in application. *U.S. Eq. Opp Comm'n v. Minden Seafood, LLC*, No. 24-2360-BWA, 2025 WL 762920, *4 (E.D. La. Mar. 11, 2025).

The Fifth Circuit has therefore made clear that court congestion cannot carry the analysis on its own absent concrete, comparative evidence. *See Clarke*, 94 F.4th at 515-16 (explaining that reliance on court congestion, without more, is insufficient to justify transfer). Where the records contain no meaningful data demonstrating that one forum would resolve the case more efficiently than the other, this factor does little work. *See id.*; *Volkswagen I*, 371 F.3d at 206.

Here, neither party has presented meaningful statistics or other reliable evidence showing that the Pecos Division would adjudicate this matter more quickly—or more

efficiently—than the Lafayette Division. Plaintiff does present some statistics about the efficiency and speed of the Western District of Texas. (Doc. 11-5 at 15). But the same data also shows that WDLA-Lafayette has a significantly smaller case load and less congestion. *Id.* And though Plaintiff does put forward some data about the Western District's speed relative to WDLA-Lafayette, such data does not consider the types of cases each docket manages.

In the absence of a meaningful showing, any assessment of relative docket speed would amount to an informed guess at best, and speculation at worst. Accordingly, the court congestion factor does not meaningfully favor either forum. At most, it weighs only slightly against transfer, and it does not alter the balance of the remaining public and private interest factors.

### B. Local Interest

The second public interest factor under § 1404 is the local interest in having localized controversies decided at home. *Volkswagen II*, 545 F.3d at 315. This factor reflects the principle that jury duty should not be imposed on a community that has no meaningful relation to the dispute. *Id*.

> [T]he local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case. Considerations such as the location of the injury, witnesses, and plaintiff's residence, are proxies for determining what local interests exist in each venue.

*Clarke*, 94 F.4th at 511 (emphasis in original; footnote, quotations, internal citation, and alteration omitted).

13

In evaluating local interest, the Fifth Circuit instructs courts to consider the connection between the forum and the events giving rise to the suit. *See Bruck*, 30 F.4th at 435. The inquiry does not turn on whether some factual event occurred in the forum, but where the alleged wrong was committed. *Id.* In this context, the alleged wrong would be the termination decision itself, rather than an antecedent workplace incident that preceded the incident. *Id.* Applying those principles here, the local interest factor weighs in favor of WDLA-Lafayette, though the Court acknowledges that West Texas is not without some connection to the dispute.

It is undisputed that the verbal altercation that preceded Plaintiff's termination occurred at the worksite in Loving County, Texas. (Doc. 1 at 5). That fact gives WDTX-Pecos a historical connection to the events underlying the case. But the record reflects that the decision to terminate Plaintiff's employment was made in Lafayette, Louisiana, by CTP personnel located at the company's headquarters. (Doc. 8-2 at 2). All the supervisors involved in the termination decision, the human-resources personnel, and the custodians of the relevant employment records are all located in Louisiana. (Doc. 8 at 2). Even Plaintiff now resides in Louisiana. (Doc. 1 at 5).

District courts applying Fifth Circuit precedent in wrongful termination cases have treated these considerations as central to the local-interest analysis. For example, in *Garza v. McCamey Cnty. Hosp. Dist.*, No. 5:22-cv-00229-XR, 2022 WL 1811001 at *3 (W.D. Tex. June 2, 2022), the Court granted a transfer concluding that the destination division had the stronger local interest because the employment relationship, termination decision, and relevant witnesses were centered there. *Garza* illustrates that,

14

in employment cases, local interest follows the locus of the employer's decision making and operations. *Id.*

The Court therefore finds that, while West Texas has a historical connection to the dispute as the site of the underlying incident, Louisiana has the stronger interest in adjudicating the legality on a termination decision made by a Louisiana employer, affecting a Louisiana resident, and supported by records and witnesses located in that forum. The WDLA-Lafayette—not the WDTX-Pecos—has the stronger and much more substantial stake in this case. This factor favors transfer.

### C.  Familiarity With Governing Law & Conflict of Laws

The last two public interest factors—familiarity with the governing law and the avoidance of conflicts of law—travel together here and they arrive at the same place: neutrality. This case arises under Title VII, a federal statute applied daily in courts across the Fifth Circuit. (Doc. 1 at 5). Both this Court and WDLA-Lafayeytte have ample experience adjudicating such claims, and neither forum enjoys home-field advantage in interpreting or applying settled federal law.

Just as importantly, no party has identified any conflicts of law issue that would complicate the proceedings or counsel in favor of one forum over the other. When the law to be applied is the same, the courts are equally capable, and no conflict clouds the path forward, these considerations do not influence the transfer analysis. They neither steer nor stall the transfer decision.

## CONCLUSION AND RECOMMENDATION

Considering the private and public interest factors together, CTP has met its burden to show that the WDLA-Lafayette is the most convenient forum. The private interest factors weigh decisively in favor of transfer: the relevant witnesses, the custodians of records, and the Plaintiff himself are mostly located in Louisiana; access to proof is centered there; and trial in that forum would be easier, more expeditious, and less expensive. The public interest factors point in the same direction. Louisiana has a stronger local interest in adjudicating a termination decision by a Louisiana employer, affecting a Louisiana resident, while the remaining public considerations—court congestion, familiarity with governing law, and potential conflicts of law—are neutral. When the factors are weighed as a whole, the balance does not merely tip; it settles in favor of transfer. CTP has therefore shown good cause under § 1404, and this Court **RECOMMENDS** this case be transferred to the WDLA-Lafayette. (Doc. 8).

SIGNED this 5th day of February, 2026.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

16

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).